**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01162-NYW

MONGER FAMILY LIMITED PARTNERSHIP,

     Plaintiff,

v.

PETER J. SCULLY,
KARL D. KJOLHEDE, and
SUSAN B. KJOLHEDE,

     Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on Defendants Peter J. Scully, Karl D. Kjolhede, and Susan B. Kjolhede's (collectively, "Defendants") Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(b)(7) ("Motion to Dismiss" or "Motion") [Doc. 37, filed July 20, 2021]. The court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated July 19, 2021 [Doc. 35]. *See also* [Doc. 23]. The court finds that oral argument would not materially assist in the resolution of the issues in the Motion. For the reasons explained herein, the Motion to Dismiss is **GRANTED**.

**FACTUAL BACKGROUND[1]**

     Plaintiff Monger Family Limited Partnership's ("MFLP" or "Plaintiff") owns a ranch located in Routt County, Colorado ("Monger Ranch" or the "Ranch"), [Doc. 1 at ¶ 2], and this action involves a dispute over MFLP's right to access the Ranch via a road that crosses the

---

[1] The following facts are drawn from the operative Complaint [Doc. 1], and taken as true for the purposes of the instant Motion.

properties owned by Defendants Peter J. Scully ("Defendant Scully"); and Karl Kjolhede and Susan Kjolhede (together, the "Kjolhede Defendants").  [*Id.* at ¶¶ 1–9].

In or around 1908, an approximately three-mile public highway was constructed in Routt County which ran from County Road 46 to County Road 44 (the "Trull Creek Road" or the "Road") pursuant to a since-repealed federal statute, Revised Statute 2477 ("R.S. 2477").[2]  [Doc. 1 at ¶¶ 12–13; Doc. 1-2 at 1].  According to the map contained in Exhibit A of the Complaint [Doc. 1-1], the lands crossed by the Trull Creek Road are now owned by the following, in order from west to east: the Kjolhede Defendants (the "Kjolhede Parcel"); Defendant Scully (the "Scully Parcel"); the United States Bureau of Land Management ("BLM") (the "BLM Parcel"); MFLP (i.e., the Ranch); and other landowners to the east of the Monger Ranch.  *See* [Doc. 1-1]; *see also* [Doc. 1 at ¶ 9].  At issue in this action is the approximately three-quarter mile portion of the Trull Creek Road to the west of the Monger Ranch that crosses the Kjolhede Parcel, Scully Parcel, and the BLM Parcel ("Access Road").[3]  *See* [*id.* at ¶¶ 1, 9].  MFLP alleges, however, that "[a]ccess across the BLM Parcel to the Monger Ranch is not in dispute and is not part of the subject matter of this action" which "only involves MFLP's right to use that portion of road as constructed across the lands owned by Defendants Scully and Kjolhede."  [*Id.* at ¶ 9].

MFLP alleges that for more than one hundred years—beginning "[s]ometime in about 1907 or 1908," [*id.* at ¶ 11]—MFLP and members of the Monger family have accessed, and continue to access, the Monger Ranch via the Access Road.  *See* [*id.* at ¶¶ 1, 9, 11–13]; *see also* [Doc. 1-1].

---

[2] The Road was known as the Trull Creek Road prior to a petition to vacate the road was approved in 1930.  *See* [Doc. 1 at ¶¶ 24–25].

[3] Defendants take issue with the term "Monger Access Road," and instead, use the term "Trull Creek Road." [Doc. 37 at 1 n.1].  However, this court understands that the entirety of Trull Creek Road is not at issue, but only the portion of the road across private lands owned by Defendants Scully and Kjolhede.  *See* [Doc. 1 at ¶ 9].  Thus, this court will utilize the more generic term "Access Road."

Thereafter, "and in particular on May 4, 1921, . . . the public, the Monger family and MFLP's predecessors" used the Access Road to access "the BLM parcel and Monger Ranch for residential and agricultural purposes." [*Id.* at ¶ 20]; *see also* [*id.* at ¶ 18].

The Trull Creek Road was abandoned and vacated in 1930 by the Routt County Board of County Commissioners, at the request of the Parties' predecessors, who represented that "the condition of this road is not fit for travel at any time of the years; that there is no lands adjoining this road occupied for farm and ranch purposes, which will be left without a public road should this highway be abandoned and vacated." [*Id.* at ¶ 24; Doc. 1-9 ("Vacation Petition")]. MFLP alleges the "[t]he vacation ordinance did not include the metes and bounds description of the [ ] Access Road right of way . . . that were contained in the documents under which the right of way was created." [Doc. 1 at ¶ 25]. Notwithstanding the vacation of the Trull Creek Road in 1930, MFLP and its predecessors continued to use the Access Road thereafter "for access to the BLM Parcel and the Monger Ranch for residential and agricultural purposes." [*Id.* at ¶¶ 26, 28, 30].

In 2019, MFLP entered into a contract to sell the Monger Ranch to family members, with the purchase price "to be paid in part by public funding of a conservation easement." [*Id.* at ¶ 32]. MFLP alleges that, "[a]s a condition to granting a conservation easement, the Monger Ranch must have access to a public road." [*Id.*]. Defendants have objected to MFLP's use of the Access Road and limited MFLP's use of the road to agricultural purposes only. [*Id.* at ¶¶ 33, 37]. MFLP alleges that it "takes the position that the [ ] Access Road is a public road . . . whereas the Defendants assert that it is not". [*Id.* at ¶ 37]. MFLP now seeks the court's determination and declaration that MFLP is entitled to the use the Access Road across the Kjolhede Parcel and Scully Parcel in order to access the Monger Ranch and the BLM Parcel for all uses available for a public road. *See* [*id.* at ¶¶ 46, 57, 67, 72].

## PROCEDURAL BACKGROUND

MFLP initiated this action on April 27, 2021 by filing a Complaint wherein it asserts four claims for relief, all styled as claims for Declaratory Judgment.  *See* [Doc. 1].  In doing so, MFLP invokes this court's original federal question jurisdiction pursuant to 28 U.S.C. § 1331 and its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for its related state law claims.  [*Id.* at ¶ 7].  Count I seeks a declaration "to determine the rights, obligations and status of the parties under [Revised Statute] 2477."  [Doc. 1 at ¶ 36]; *see also* [*id.* at ¶¶ 35–46].  Count II seeks an implied easement under federal law.  [*Id.* at ¶¶ 47–57].  Count III seeks an easement by estoppel under Colorado law.  [*Id.* at ¶¶ 58–67].  And Count IV seeks an easement by prescription under Colorado law.  [*Id.* at ¶¶ 68–72].[4]  MFLP originally filed the Complaint against Defendant Scully; the Kjolhede Defendants; United Wholesale Mortgage, LLC d/b/a United Wholesale Mortgage ("United Wholesale Mortgage"); Wells Fargo Bank, N.A. ("Wells Fargo"); and the Public Trustee of the County of Routt, Colorado ("Routt County Public Trustee").  [Doc. 1].  The Parties have consented to the undersigned's jurisdiction for all purposes.  *See* [Doc. 23; Doc. 25; Doc. 35].

On June 16, 2021, MFLP stipulated to the dismissal of Defendant Wells Fargo from this action, [Doc. 22], and later stipulated to the dismissals of Defendants United Wholesale Mortgage and the Routt County Public Trustee.  *See* [Doc. 26; Doc. 32].  On July 19, 2021, the court conducted a Scheduling Conference and set a discovery deadline of January 31, 2022 and a dispositive motion deadline of March 2, 2022.  [Doc. 33 at 9; Doc. 36 at 2].  On July 20, 2021, Defendants filed the instant Motion to Dismiss, seeking to dismiss all claims in the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).  [Doc. 37].  MFLP responded to the Motion on August 10, 2021, [Doc. 38], and Defendants replied on August 17,

---

[4] The court will refer to Counts II, III, and IV together as the "Easement Claims."

2021, [Doc. 39].   On December 3, 2021, the Parties filed a Joint Motion to Stay Proceedings Pending Outcome of Motion to Dismiss and Entry of Revised Case Management Order ("Motion to Stay"), [Doc. 43], and the court granted the Motion to Stay on December 16, 2021, [Doc. 44]. The Motion to Dismiss is thus ripe for determination.

## LEGAL STANDARDS

### I.      Rule 12(b)(1)

Federal courts are ones of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute … which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).   Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction."   Fed. R. Civ. P. 12(b)(1).   "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim.   Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Assn., Inc.,* 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (quoting *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017)).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).   Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).   In such an instance, "a

5

court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.  The party asserting jurisdiction bears the burden of establishing the court's subject-matter jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

## II.      Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").  The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.     Rule 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) allows for the dismissal of a case if a party fails to join a required party under Rule 19.  In order to dismiss a case pursuant to Rule 12(b)(7), the court must find that: (1) the party is a required person under Rule 19(a), (2) joinder of the party is

infeasible under Rule 19(b), and (3) dismissal is appropriate based on "equity and good conscience." Fed. R. Civ. P. 19(b); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Intrawest ULC*, No. 13-cv-00079-PAB-KMT, 2014 WL 1016072, at *2 (D. Colo. Mar. 14, 2014); *Entek GRB, LLC v. Stull Ranches, LLC*, No. 11-cv-01557-PAB-KLM, 2013 WL 1283811, at *1 (D. Colo. Mar. 27, 2013). "The proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier,* 17 F.3d 1292, 1293 (10th Cir. 1994); *see also* 5C Charles Alan Wright et al., *Federal Practice & Procedure,* § 1359 (3d ed. 2003) ("In reviewing a Rule 12(b)(7) motion, a court must accept all factual allegations in the complaint as true."). The moving party may satisfy this burden "by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Collier,* 17 F.3d at 1293 (internal quotation omitted). "A Rule 12(b)(7) motion will not be granted on the vague possibility that persons who are not parties may have an interest in the action." *Nat'l Union,* 2014 WL 1016072, at *2 (internal quotation omitted).

## ANALYSIS

As indicated above, MFLP purports to assert Counts I and II pursuant to federal law and Counts III and IV pursuant to state law. *See* [Doc. 1 at ¶¶ 35–72]. Defendants' Motion seeks to dismiss all of Plaintiff's claims. To provide a framework for its analysis, this court first briefly summarizes the Parties' respective positions.

***Defendants' Arguments.*** As to Count I, Defendants assert that MFLP "seeks a Declaratory Judgment establishing Trull Creek Road as a public road under R.S. 2477 and C.R.S. § 43-1-202."[5]

---

[5] As discussed further below, MFLP contends that Defendants "confuse[d] the relief MFLP is seeking," and that "MFLP is not asking for a declaration that the [ ] Access Road is a public road." *See* [Doc. 38 at 9].

[Doc. 37 at 4].  Based on this understanding of the relief that Plaintiff is seeking, Defendants argue that Count I fails to state a claim because the Trull Creek Road was "abandoned and vacated in 1930 at the request of Plaintiff's predecessor."  [*Id.*].  Defendants also seek to dismiss Count I on the basis that MFLP "lacks standing to claim a right-of-way under R.S. 2477 . . . because private individuals cannot assert ownership in public roads."  [*Id.* at 7–8].

Next, Defendants request dismissal of MFLP's Easement Claims—Counts II, III, and IV— for failure to state a claim "because any access easement granted under these claims would not actually access the Monger Ranch, and further because Plaintiff has preemptively disavowed any claim against the United States under the Quiet Title Act."  [*Id.* at 8].

Finally, Defendants seek dismissal of the Complaint in its entirety under Rule 12(b)(7) for failure to join indispensable parties under Rule 19—namely, the United States of America, the Routt County Board of Commissioners, and landowners to the east of the Monger Ranch.  *See* [*id.* at 11–14].

***Plaintiff's Arguments.***  In its Response [Doc. 38], MFLP contends that the arguments in Defendants' Motion "are premised on the false assertion that MFLP is seeking a declaration that the Monger Access Road be declared a public road," which "is not the case."  [Doc. 38 at 2]. Rather, MFLP explains that it is "seeking a private easement."  [*Id.* at 3].  Specifically, MFLP claims that it is "asserting that it holds a private easement derived from the reservation of a portion of the right-of-way created for Trull Creek Road under RS 2477, by implication, estoppel, or in the alternative, prescription."  [*Id.* at 2].  Based on the foregoing clarification as to the relief it is seeking, MFLP then addresses each of Defendants' arguments with respect to the claims at issue. *See* [*id.* at 3–12].

As to Count I, MFLP argues that the relief it seeks is not impacted by the vacation of the Trull Creek Road, and the Complaint sufficiently pleads that MFLP's right to use the Road "for all uses as a public road that was established under RS 2477 in 1913 was not abandoned by the 1930 petition." [Doc. 38 at 4, 9]. MFLP also argues that it has standing to assert its interest to a private easement under R.S. 2477, and that the Quiet Title Act does not apply to its claim. [*Id.* at 9–10]. As to the Easement Claims under Counts II, III, and IV, MFLP argues that "because access over land owned by the United States is not contested, MFLP does not need to seek an easement over BLM land," and therefore the United States need not be joined in this action. [*Id.* at 10 (capitalizations omitted)]. With respect to all the claims, MFLP argues that it has already joined all necessary parties "who have an interest in the easement being sought" in this action and therefore MFLP need not include the United States, Routt County, and landholders to the east of the Ranch in this action. [*Id.* at 11–12 (capitalizations omitted)].

***Defendants' Reply.*** In the Reply [Doc. 39], Defendants contend that, based on the allegations in the Complaint that the Trull Creek Road was a "public" road, *see* [Doc. 1 at ¶¶ 37, 47], Defendants' Motion to Dismiss "assumed that Plaintiff sought to re-open the entire length of Trull Creek Road as a public road." [Doc. 39 at 1–2]. Defendants concede, however, that MFLP's Response brief "has clarified that '(Count I) is a request from MFLP for a declaration that it is entitled to the private easement derived from the reservation of a portion of the right-of-way created for Trull Creek Road under RS 2477.'" [Doc. 39 at 2 (quoting [Doc. 38 at 3])]. Based on this clarification, Defendants' Reply modifies their standing challenge as to Count I, arguing instead that MFLP "lacks standing, because private parties cannot claim private easements under R.S. 2477 under Tenth Circuit case law." [Doc. 39 at 1]; *see also* [*id.* at 2–5]. The court now turns to considering the viability of each Count below.

I.      **Count I – Declaratory Judgment Pursuant to R.S. 2477**

MFLP's Count I seeks an order declaring "the rights, obligations and status of the parties under RS 2477." [Doc. 1 at ¶ 36]. MFLP asserts that it "is entitled to the Court's determination and declaration that MFLP is entitled to use *a sixty-foot wide right-of-way* across the Kjolhede Parcel and the Scully Parcel in the location of the [ ] Access Road for access to the Monger Ranch and the BLM parcel *for all uses available for a public road*." [*Id.* at ¶ 46 (emphasis added)]. As previously mentioned, by way of Response, MFLP clarified that it "is not seeking the right to use a public road. Rather, it is seeking *its rights in a private easement* over the Scully and Kjolhede's property – a right that was established under RS 2477 in 1913." [Doc. 38 at 8 (emphasis added)].

Defendants seek dismissal of this claim on the basis that MFLP "lacks standing, because private parties cannot claim private easements under R.S. 2477 under Tenth Circuit case law." [Doc. 39 at 1]; *see also* [*id.* at 2–5]. Because the Declaratory Judgment Act does not provide an independent basis for federal subject matter jurisdiction, *see Jones v. Metro. Denver Sewage Disposal Dist. No. 1*, 537 F. Supp. 966, 971 (D. Colo. 1982), this court must determine whether R.S. 2477 confers subject matter jurisdiction over this action. Accordingly, the court first sets out the statutory framework of R.S. 2477 and then considers whether MFLP has established standing to bring its claim for relief under Count I before this court.

A.      **Statutory Background – R.S. 2477**

Congress passed R.S. 2477 as part of the Mining Act of 1866; the entirety of the statute reads: "And be it further enacted, That the right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Mining Act of July 26, 1866, § 8, 14 Stat. 253, *codified at* 43 U.S.C. § 932, *repealed by* Federal Land Policy Management Act of 1976, Pub. L. No. 94–579 § 706(a), 90 Stat. 2793.

Until it was repealed in 1976, "this statute set out an open-ended offer from the United States to the public of a right-of-way across unreserved public lands." *Fairhurst Family Ass'n, LLC v. U.S. Forest Serv., Dep't of Agric.*, 172 F. Supp. 2d 1328, 1330 (D. Colo. 2001). "This offer was accepted, and a valid R.S. 2477 right-of-way created, by the construction of a road open to and used by the public on public lands that were not reserved at the time of acceptance." *Id.* Although Congress repealed R.S. 2477, the Federal Land Policy Management Act ("FLPMA") preserved any rights-of-way that existed before October 21, 1976. *See* 43 U.S.C. § 1769(a); *Sierra Club v. Hodel*, 848 F.2d 1068, 1078 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992).

To establish that a public highway has been created pursuant to R.S. 2477, a plaintiff must satisfy two elements: "(1) a right-of-way over land in the public domain, and (2) acceptance or use of it by the public." *High Lonesome Ranch, LLC v. Bd. of Cty. Comm'rs for Cty. of Garfield*, 508 F. Supp. 3d 801, 831 (D. Colo. 2020). Land in the public domain "is land which is open to sale or other disposition under general laws." *Bd. of Cty. Comm'rs of Cheyenne County v. Ritchey*, 888 P.2d 298, 299 (Colo. App. 1994). Land "to which any claims or rights of others have attached" is not in the public domain. *Barker v. Bd. of Cty. Comm'rs of Cty. of La Plata, Colo.*, 49 F. Supp. 2d 1203, 1215 (D. Colo. 1999). Patented land also is no longer in the public domain as of the date of entry. *See id.*

"Whether and when the offer of grant is accepted by the public are questions resolved by state law." *Id.* at 1214; *see also High Lonesome Ranch*, 508 F. Supp. 3d at 831 ("Acceptance of R.S. 2477 dedications is analyzed under state law."); *Camp Bird Colorado, Inc. v. Bd. of Cty. Comm'rs of Cty. of Ouray*, 215 P.3d 1277, 1284 (Colo. App. 2009) ("Questions of whether and when the grant of a right-of-way is accepted by the public are matters of state law."). The Colorado

Supreme Court has summarized the state's law on acceptance of a Congressional grant under R.S. 2477 as follows:

> We have had occasion to consider [R.S. 2477] . . . in varying situations. The sum of our holdings is that the statute is an express dedication of a right of way for roads over unappropriated government lands, acceptance of which by the public results from use by those for whom it was necessary or convenient. It is not required that work shall be done on such a road, or that public authorities shall take action in the premises. User is the requisite element, and it may be by any who have occasion to travel over public lands, and if the use be by only one, still it suffices. A road may be a highway though it reaches but one property owner. He has a right to access to other roads and the public has a right of access to him. Its character is not determined by the fact that but few persons use it.

*Brown v. Jolley*, 153 Colo. 530, 387 P.2d 278, 281 (1963) (quoting *Leach v. Manhart*, 102 Colo. 129, 77 P.2d 652, 653 (1938)).  The use of such road, of course, "must occur before the land in question is withdrawn from the public domain or included within a reserve."  *Barker*, 49 F. Supp. 2d at 1214 (collecting cases).

### B.     Standing

Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction."  *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).  Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party.  *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

A plaintiff must establish Article III standing to bring each of its claims separately.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).  The standing inquiry has two components: constitutional and prudential.

To establish constitutional standing, a plaintiff must demonstrate "(1) an 'injury in fact,' (2) sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must also satisfy the requirements of prudential standing. To establish prudential standing, a plaintiff must (1) assert his own rights, rather than those belonging to third parties; (2) demonstrate that his claim is not simply a "generalized grievance"; and (3) show that plaintiff's grievance falls within the zone of interests protected or regulated by statutes or constitutional guarantee invoked in the suit. *See Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002) (citations omitted). The elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Therefore, Article III standing cannot be assumed; the court must resolve issues of standing before it may reach the merits of an issue. *See Colorado Outfitters Ass'n v. Hickenlooper ("Colorado Outfitters II")*, 823 F.3d 537, 543 (10th Cir. 2016).

Here, the Parties and the court are focused on MFLP's prudential standing—that is, whether Plaintiff's claims fall into the zone of interests that R.S. 2477 intends to protect. *See* [Doc. 37 at 8 (challenging MFLP's "standing to claim a right-of-way under R.S. 2477 under Count I, because private individuals cannot assert ownership in public roads"); Doc. 38 at 8 ("Courts have held that a private individual does have standing to assert rights under RS 2477."); Doc. 39 at 1 ("Plaintiff lacks standing, because private parties cannot claim private easements under R.S. 2477 under Tenth Circuit case law.")]. The question of prudential standing is "not compelled by the language of the Constitution." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 471 (1982). Rather, it is "often resolved by the nature and

source of the claim." *Wilderness Soc.*, 632 F.3d at 1169 (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500. "In some situations, an implied right of action may exist." *Wilderness Soc.*, 632 F.3d at 1169. "Moreover, Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules." *Warth*, 422 U.S. at 501. The court will address Plaintiff's jurisdictional invocation below.

### C.    28 U.S.C. § 1331 – Federal Question Jurisdiction

Federal question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In determining whether such jurisdiction exists, a court must "look to the 'face of the complaint'" and ask whether it is "'drawn so as to claim a right to recover under the Constitution and laws of the United States'[.]" *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1023 (10th Cir. 2012) (quoting *Bell v. Hood*, 327 U.S. 678, 681 (1946)).

"[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule', which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). Under this rule, a case arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (citations omitted). The court need only examine "the well-pleaded allegations of the complaint and ignore potential defenses. . . .'" *Id.* (citation omitted); *see also Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 956 (D. Colo. 2019), *aff'd in*

*part, appeal dismissed in part,* 965 F.3d 792 (10th Cir. 2020), *cert. granted, judgment vacated,* 141 S. Ct. 2667 (2021), and *aff'd,* 25 F.4th 1238 (10th Cir. 2022).

For a plaintiff's well-pleaded complaint to establish that the claims arise under federal law within the meaning of § 1331, it "must establish one of two things: 'either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law.'" *Firstenberg*, 696 F.3d at 1023 (citation omitted). The "'creation' test" in the first prong accounts for "the vast bulk of suits that arise under federal law." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). However, where a claim finds its origins in state law, the Supreme Court has identified a "'special and small category' of cases" in which jurisdiction lies under the substantial question prong as they "implicate significant federal interests." *Id.* at 258; *see also Grable & Sons Metal Prod. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The court will address each alternative.

### 1.    Whether Federal Law Creates the Cause of Action

The court finds that R.S. 2477 does not provide Plaintiff a cause of action under federal law. To be sure, the Complaint *does* purport to seek a declaration that MFLP has an affirmative federal right under R.S. 2477, a federal statute. *See* [Doc. 1 at ¶ 36 ("This claim is brought . . . to determine and declare the rights, obligations and status of the parties under RS 2477.")). In the Complaint, MFLP does not allege that R.S. 2477 established a "private easement" over Defendants' properties in 1913—rather, it alleges that the Road was "open to public use by law under" under R.S. 2477 at the time. *See* [Doc. 1 at ¶ 43]; *see also* [Doc. 38 at 4]. But MFLP has since clarified that "it is seeking its rights in a *private easement* over the Scully and Kjolhede property" which it claims "was established under RS 2477 in 1913." [Doc. 38 at 8 (emphasis

added)]; *see also* [*id.* at 12 ("MFLP is not seeking a declaration that the [ ] Road is a public road, only that MFLP has a private easement over the Scully and Kjolhede parcels.")].

The relevant inquiry, then, is whether Plaintiff can assert an affirmative claim to establish a *private* easement under R.S. 2477 over Defendants' *private* property. This court concludes that it cannot. MFLP cites no case authority that answers this question in the affirmative, and this court similarly has found none. *See* [Doc. 38 at 8–9 (citing to *Mills v. United States*, 742 F.3d 400, 407 (9th Cir. 2014) for the general proposition that "a private landholder could assert *a claim* under RS 2477 against another private landholder" (emphasis added))]. Even assuming the portion of Trull Creek Road that makes up the Access Road was not withdrawn by the 1930 Vacation, *see* [Doc. 1-9], Plaintiff has pointed to no authority that R.S. 2477 gives an individual right to a private easement.

***R.S. 2477 Does Not Provide a Private Easement.*** MFLP insists that it continues to have an easement to continue to use the Access Road because the Mongers never ceased to use that portion of the Trull Creek Road established by R.S. 2477. [Doc. 38 at 2–3]. It reasons that the Access Road "was established as a public road pursuant to Colorado law" under Colo. Rev. Stat. 43-2-201(1),[6] [Doc. 1 at ¶ 42], and in turn, became a recognized public highway under R.S. 2477 in accordance with the statute's self-effectuating grant.

Plaintiff reasons that even if Trull Creek Road was withdrawn as a public road, "the [ ] Access Road was (and continues to be) the only road [ ] that the Mongers' could use to access their property, the petitioners unquestionably intended to reserve to the Mongers a private easement over that portion of the County's RS 2477 right-of-way for the Monger Access Road for all

---

[6] That part of Colorado's public highway statute states "(1) The following are declared to be public highways: . . . (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years; . . . (e) All roads over the public domain, whether agricultural or mineral."

purposes permissible as a public road." [Doc. 38 at 2]. While the Mongers may or may not have a private easement to the Access Road, this court concludes that Plaintiff fails to establish that it has standing pursuant to R.S. 2477 to proceed with Claim I to determine such right.

The relevant authority supports the position that "all that is granted by R.S. 2477 is the nonpossessory right to use the right-of-way for a *public* road." *Fairhurst*, 172 F. Supp. 2d at 1330 (emphasis added); *see also id.* at 1332 ("An R.S. 2477 right-of-way authorizes the use of the land within its scope as highway, which, Plaintiff acknowledges, *means use as a public road*. . . . As an R.S. 2477 right-of-way cannot exist without the public road and vi[ce] versa, the two are essentially synonymous in this context." (emphasis added)). Indeed, to the extent that any entity possessed a right-a-way under R.S. 2477, it seems it would be the State of Colorado.

I find the court's opinion in *Peper v. Dep't. of Agric. of U.S.*, No. 04-cv-01382-ZLW-PAC, 2006 WL 2583119, at *1 (D. Colo. Sept. 5, 2006) instructive here. In that case, the plaintiff filed a complaint under the Quiet Title Act against the Department of Agriculture, its Secretary, the Forest Service, and its Chief.[7] *Peper*, 2006 WL 2583119, at *1. The plaintiff asserted three easement rights for which he sought to quiet title: (1) a common law easement by necessity; (2) a public road easement under R.S. 2477; and (3) a statutory easement under the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3210(a). *Id.* Adopting in part the

---

[7] The Quiet Title Act provides the "exclusive means by which adverse claimants can challenge the United States' title to real property." *Block v. N. Dakota ex rel. Bd. of U. and Sch. Lands*, 461 U.S. 273, 273 (1983). District courts are granted jurisdiction over Quiet Title Act suits under 28 U.S.C. § 1346(f). *Kane County, Utah v. United States*, 772 F.3d 1205, 1210 (10th Cir. 2014); *Mills*, 742 F.3d at 404. A "disputed title to real property in which the United States claims an interest," 28 U.S.C. § 2409a(a), is "a prerequisite to federal court jurisdiction under the [Quiet Title Act]." *Kane County*, 772 F.3d at 1210. Thus, courts have held that the Quiet Title Act applies "'only when the title or ownership of real property is in doubt' as between the plaintiff and the United States." *McMaster v. United States*, 177 F.3d 936, 941 (11th Cir. 1999) (emphasis added) (quoting *Cadorette v. United States*, 988 F.2d 215, 223 (1st Cir. 1993)).

magistrate judge's recommendations, the district court granted in part and denied in part the defendants' motion to dismiss. The court decided that it lacked subject-matter jurisdiction under Rule 12(b)(1) over the claim based on R.S. 2477 because "members of the public do not have title to public roads" and therefore the plaintiff could not bring a quiet title suit under R.S. 2477. *Peper*, 2006 WL 2583119, at *1. Drawing a distinction between a private easement and a public road, the court further opined that "[t]he fact that Plaintiff's predecessor in interest built the road, although relevant to his claim to have an easement by necessity, does not support his claim of an actionable title interest under R.S. 2477." *Id.*

On appeal to the Tenth Circuit, the plaintiff "did not challenge the district court's determination of his Quiet Title Act claim under R.S. 2477 until his reply brief," and the Tenth Circuit therefore "deem[ed] any claim to an easement under R.S. 2477 to be waived." *Peper v. U.S. Dept. of Agric.*, 478 Fed. App'x. 515, 520 n.6 (10th Cir. 2012). Notably, the Tenth Circuit explained that "[e]ven if [the plaintiff] had continued to assert a claim under R.S. 2477 throughout the appeal, *we would affirm the district court's decision rejecting an easement under R.S. 2477 for the reasons stated by that court in its order* . . . adopting the magistrate judge's recommendation". *Id.* (emphasis added).

Here, MFLP does not bring its claim under Count I pursuant to the Quiet Title Act but that is of no substantive consequence. While MFLP alleges that it is "entitled to use a . . . right-of-way . . . in the location of the [ ] Access Road . . . for all uses available for a public road", [Doc. 1 at ¶ 46], it is emphatic that it "is not seeking the creation of the [ ] Access Road as a public road", [Doc. 38 at 12]. Rather, it is seeking a "private easement". *Id.* "Easements are real property interests . . ." *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978). And as the *Peper* court observed, merely being a member of the public does not give MFLP a personal, real property

interest in a public road created pursuant to R.S. 2477. *Peper*, 2006 WL 2583119, at \*1. Indeed, even assuming that the Access Road continued to be a public highway under R.S. 2477 because the 1930 Vacation did not apply to that portion of the Trull Creek Road, the right to use that road would not somehow transform to a private easement held by MFLP—rather it would remain as a public road easement. The same conclusion follows under Colo. Rev. Stat. § 43-2-201(1), the statute Plaintiff identifies as the original basis for its claim to the Access Road. *See* [Doc. 1 at ¶ 42]. In *State, Dep't of Nat. Resources, Wildlife Comm'n, Div. of Wildlife v. Cyphers*, 74 P.3d 447, 448 (Colo. App. 2003), the Colorado Court of Appeals similarly explained that members of the public do not have a property interest in public roads:

> The declaration of a public road under [section] 43-2-201(1)(c) does not result in the 'acquisition' of property interests, including easements, for any particular party. It only makes available to the public a route through private land. Hence, the [plaintiff]'s interest in and right to use the route recognized under [section] 43-2-201(1)(c) are no greater or lesser than those of any member of the general public.

74 P.3d at 449 (citing *Bd. of Cty. Comm'rs v. Flickinger*, 687 P.2d 975, 980 (Colo. 1984).

In sum, the court finds that MFLP fails to carry its burden to establish that R.S. 2477 gives rise to a cause of action for a *private* easement that MFLP seeks against Defendants to invoke federal question jurisdiction. *See Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001) ("The well-pleaded complaint rule operates no differently when the jurisdictional issue is whether a district court possesses subject matter jurisdiction of a declaratory judgment action purporting to raise a federal question."); *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915 (8th Cir. 2001) (agreeing "that the right of an individual to use a public road is not a right or interest in property"); *Kinscherff*, 586 F.2d at 160 (10th Cir. 1978) ("Members of the public as such do not have a 'title' in public roads. To hold otherwise would signify some degree of ownership as an easement. It is apparent that a member of the public cannot assert such an

ownership in a public road."); *Crawford v. Salt Lake Cty.*, No. 2:06-cv-106 PGC, 2006 WL 8459371, at *12 (D. Utah Sept. 25, 2006) ("The court's research has not revealed a case that holds that a private plaintiff can acquire title to an R.S. 2477 right-of-way."), *report and recommendation adopted sub nom.*, 2006 WL 8459369 (D. Utah Oct. 31, 2006); *U.S. v. Balliet*, 133 F. Supp. 2d 1120, 1128 (W.D. Ark. 2001) (observing that "R.S. 2477 did not provide for the establishment of rights of way over private lands"), *aff'd*, 21 Fed. App'x. 534 (8th Cir. 2001); *see also Lovvorn v. Salisbury*, 701 P.2d 142, 144 (Colo. App. 1985) ("The ultimate distinction between a public road and a private easement, however acquired, is that the private easement can be, and is, limited to specific individuals and/or specific uses while a public road is open to all members of the public for any uses consistent with the dimensions, type of surface, and location of the roadway.").  To accept Plaintiff's argument would be to conclude that R.S. 2477 gives rise to a private right of action to establish a private easement.  Plaintiff fails to carry its burden to support this conclusion under binding Supreme Court or Tenth Circuit law.

### 2.     Whether Plaintiff's Right to Relief Necessarily Depends on Resolution of a Substantial Question of Federal Law *(Grable)*

MFLP also appears to argue that this court also has subject matter jurisdiction because Count I involves the resolution of a substantial question of federal law—by contending that it "has standing to assert its interest to a private easement" and "the right to the easement stems from a federal statute, RS 2477 . . ."  [Doc. 38 at 10].  Respectfully, this court is not persuaded.

The substantial question doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.   To invoke federal question jurisdiction in this manner, MFLP must show that "a federal issue is: (1)

necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "[A] few important principles" mark "[t]he narrow boundaries of the substantial question category" of federal question jurisdiction. *Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 110 F.3d 944, 947 (10th Cir. 2014). First, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)). Second, federal question jurisdiction cannot "depend solely on 'a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.'" *Id.* (quoting *Caterpillar Inc.*, 482 U.S. at 393). Moreover, "if a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases,' but rather is 'fact-bound and situation-specific,' then federal question jurisdiction will generally be inappropriate." *Id.* at 947–48 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006)).

Jurisdiction under the substantial question doctrine "is exceedingly narrow—a special and small category of cases." *Firstenberg*, 696 F.3d at 1023 (citation and internal quotation marks omitted). "[M]ere need to apply federal law in a state-law claim will not suffice to open the 'arising under' door" of federal jurisdiction. *Grable*, 545 U.S. at 313. Instead, "federal jurisdiction demands not only on a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* (citation and quotations omitted).

At the outset, the court notes that neither of the Parties address these factors explicitly. *See* [Doc. 37; Doc. 38; Doc. 39]. Nevertheless, because this court has an independent obligation to

determine whether subject matter jurisdiction exists, *see 1mage Software*, 459 F.3d at 1048, the court will briefly analyze each factor as necessary below.

**Necessarily Raised.**   To determine whether an issue is "necessarily" raised, the Supreme Court has focused on whether the issue is an "essential element" of a plaintiff's claim. *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (citing *Grable*, 545 U.S. at 315).

The court finds that the first prong of substantial question jurisdiction is not met here because MFLP's claims do not necessarily raise or depend on issues of federal law.  MFLP argues that it has standing to assert its right to a *private* easement under R.S. 2477.  *See* [Doc. 38 at 9, 10]. It likewise contends that "[c]ourts have held that a private individual does have standing to assert rights under RS 2477." [*Id.* at 8].  In support of this assertion, MFLP cites to *Mills v. United States*, 742 F.3d 400, 407 (9th Cir. 2014) for the proposition that "a private landholder could assert a claim under RS 2477 against another private landholder."  [Doc. 38 at 8–9].  However, the court finds *Mills* inapplicable here. In that case, the Ninth Circuit held that the prudential standing doctrine did "not bar a legal action by landowners asserting an interest in accessing their own property over an alleged R.S. 2477 route." 742 F.3d at 408.  Notably, the court explained that the plaintiff sought "a declaration that he may use a *right-of-way* over private property to access his own property interests."  *Id.* (emphasis added).

Here, although MFLP alleges in the Complaint that it is seeking a declaration that it is entitled to a "right-of-way" across Defendants' properties "for all uses available for a public road," [Doc. 1 at ¶ 46], as previously explained,  Plaintiff has since clarified that "it is seeking its rights in a *private easement* over the Scully and Kjolhede propert[ies]" which it claims "was established under RS 2477 in 1913."  [Doc. 38 at 8 (emphasis added)]; *see also* [*id.* at 12 ("MFLP is not seeking a declaration that the [ ] Road is a public road, only that MFLP has a private easement

over the Scully and Kjolhede parcels.")].  Notably, "[a]n R.S. 2477 right-of-way authorizes the use of the land within its scope as highway, which . . . means use as a *public road*." *Fairhurst*, 172 F. Supp. 2d at 1332 (emphasis added).  And "[a]s an R.S. 2477 right-of-way cannot exist without the public road and vi[ce] versa, the two are essentially synonymous in this context." *Id.*

Thus, *Mills* is inapposite to the relevant inquiry here—that is, whether an R.S. 2477 right-of-way is "necessarily" raised as an "essential element" of Plaintiff's declaratory judgment claim seeking to establish a *private* easement over Defendants' *private* property.[8]  *See Gilmore*, 694 F.3d at 1173.  Again, MFLP cites no authority that affirmatively responds to this question.  *See* [Doc. 38 at 8–9 (citing to *Mills*, 742 F.3d at 407, for the general proposition that "a private landholder could assert *a claim* under RS 2477 against another private landholder" (emphasis added))].  And, as explained above, the court's review of relevant authority does not reveal that a plaintiff can look to R.S. 2477 to establish a private easement over private land under the circumstances MFLP alleges in the Complaint.  *See, e.g.*, *Fairhurst*, 172 F. Supp. 2d at 1330, 1332; *Kinscherff*, 586 F.2d at 160 ("Members of the public as such do not have a 'title' in public roads. To hold otherwise would signify some degree of ownership as an easement.  It is apparent that a member of the public cannot assert such an ownership in a public road.").[9]

---

[8] MFLP also cites the lower court's opinion on remand in *Mills v. Wood*, No. 4:10-cv-00033-RRB, 2014 WL 3725391 (D. Alaska July 25, 2014) for the same proposition: that "Courts have held that a private individual does have standing to assert rights under RS 2477."  [Doc. 38 at 8–9].  The court finds that opinion inapplicable for the same reasons as *Mills*.  The question here is not whether a private individual cannot bring a claim to establish the right to use an existing public right-of-way established under R.S. 2477.  Rather, as framed above, the question MFLP raises is whether a private individual can bring a claim to establish a private easement under R.S. 2477.

[9] In the Complaint, MFLP "takes the position that the [ ] Access Road is a public road pursuant to RS 2477" and alleges that "Defendants assert that it is not [a public road] and that the [ ] Access Road can only be used for agricultural purposes."  [Doc. 1 at ¶ 37].  Based on the foregoing position—which is not addressed in the Response—combined with Plaintiff's clarification that it is seeking a private easement, it is unclear whether MFLP intends to ultimately take the position that it may seek a private easement in a public road.  Notwithstanding the merits, the court does

In *Fairhurst*, the plaintiff—the owner of "four adjacent patented mining claims in Boulder County, Colorado"—sought "a declaration confirming its right of access to certain properties via an alleged public road and right-of-way across federal land administered by the United States Forest Service." 172 F. Supp. 2d at 1329–30. The plaintiff alleged this court had jurisdiction to decide its claim "pursuant to the Quiet Title Act . . . and 28 U.S.C. § 1346(f)." *Id.* at 1329. The plaintiff also asserted that "the roads in existence at the date of patent 'were' located within a 'statutory right of way' created pursuant to" R.S. 2477. *Id.* at 1330. The defendant moved to dismiss the complaint for lack of jurisdiction, arguing that the plaintiff "lack[ed] the requisite ownership interest in the road and right-of-way to maintain an action" under those statutory provisions. *Id.* at 1329. In granting the defendant's motion to dismiss, the court explained that the plaintiff could not assert "a real property interest in the alleged R.S. 2477 right-of-way." *Id.* at 1332. Notably, the court found "spurious" the plaintiff's attempts to distinguish "a private plaintiff's ability to quiet title in a *public road* created pursuant to R.S. 2477" with such plaintiff's "ability to quiet title with respect to the *right-of-way* granted pursuant to this statute." *Id.* (emphasis in original). Relevant here, the court explained why such distinction lacked basis:

> A right-of-way is "a species of easements" and is subject to the principles that govern easements. An easement creates a nonpossessory right in its holder to enter and use land in the possession of another for limited purposes authorized by the easement. An R.S. 2477 right-of-way authorizes the use of the land within its scope as highway, which, Plaintiff acknowledges, means use as a public road. *An R.S. 2477 right-of-way does not, in fact, even come into existence unless and until such a "highway," e.g., public road, is established. As an R.S. 2477 right-of-way cannot exist without the public road and vi[ce] versa, the two are essentially synonymous in this context.* That Plaintiff seeks to quiet title in the "statutory right-of-way," rather than in the "public road" on this right-of-way is, therefore, a distinction without a difference.

---

not find R.S. 2477 to be an "essential element" of such argument such that it would be "necessarily" raised and relevant to its resolution.

*Id.* (emphasis added) (citations omitted).  In addition, the court explained that "[e]ven if an R.S. 2477 right-of-way was somehow distinguishable from the public road it contains, Plaintiff would still lack the requisite interest to quiet title in the right-of-way" because "an R.S. 2477 right-of-way is, by definition, *open to all members of the public who wish to use it*." *Id.* (emphasis added).

Moreover, the *Fairhurst* court relied upon the Tenth Circuit's opinion in *Kinscherff v. United States* to support its conclusion that the plaintiff could not assert "a real property interest in [an] alleged R.S. 2477 right-of-way." *Id*. at 1331.  In *Kinscherff*, the plaintiffs brought a quiet title action and "sought to establish their right to use a public road allegedly created by operation of R.S. 2477 and New Mexico law." *Id.*  The Tenth Circuit observed that "[a] quiet title action may be brought by anyone claiming an interest in real property. The interest, however, must be some interest in the title to the property.  An attempt to remove a cloud from title presupposes that the plaintiff has some title to defend." *Kinscherff*, 586 F.2d at 160 (internal citations omitted). The court held that the real property interest in a public road created by operation of R.S. 2477 and other authority "is vested in the public generally" and "[m]embers of the public as such do not have 'title' in public roads. To hold otherwise would signify some degree of ownership as an easement. It is apparent that a member of the public cannot assert such an ownership in a public road." *Id.* at 160.  Therefore, the court held, "the 'interest' plaintiffs seek to assert as part of the public is not of such a nature to enable them to bring suit to quiet title." *Id.* at 161.

Here, although MFLP does not seek to invoke this court's jurisdiction under the Quiet Title Act, MFLP asserts that the Access Road that is the subject of this action was created for public use pursuant to R.S. 2477. *See, e.g.*, [Doc. 1 at ¶ 41].  That MFLP seeks to assert its rights to a "private easement" in the statutory "right-of-way"—i.e., the Access Road—rather than in the entire Trull Creek Road on this right-of-way, *see* [Doc. 38 at 2], "is, therefore, a distinction without a

difference." *Fairhurst*, 172 F. Supp. 2d at 1332; *see also Peper*, 2006 WL 2583119, at *1 ("Plaintiff's interest in the road under R.S. 2477 is not the type of interest that permits a suit to quiet title because members of the public do not have title to public roads. The fact that Plaintiff's predecessor in interest built the road, although relevant to his claim to have an easement by necessity, does not support his claim of an actionable title interest under R.S. 2477.").  But to the extent that R.S. 2477 is implicated, it seems only as evidence of, or to circumvent further inquiry into, the actual use of the Access Road to preemptively determine the parameters of the private easement Plaintiff seeks—*e.g.*, the Mongers have used the Access Road consistent with public use that would be permitted under R.S. 2477 so a court should conclude that the purpose and boundaries of the private easement to MFLP (1) includes residential purposes and (2) should be at least sixty feet wide, without considering further facts.  *See* [Doc. 1 at ¶¶ 30, 34].

In sum, MFLP has not established the first prong of the narrow substantial question category of federal question jurisdiction: that the issue of an R.S. 2477 right-of-way—which is no different from the public road it contains, *see Fairhurst*, 172 F. Supp. 2d at 1332—is "necessarily" raised as an "essential element" of Plaintiff's declaratory judgment action seeking to establish a private easement over Defendants' private property.

***Substantiality***.  The court also finds that the second prong, substantiality, is not met. To determine substantiality, courts "look[ ] to whether the federal law issue is central to the case." *Gilmore*, 694 F.3d at 1175.  Courts distinguish "between 'a nearly pure issue of law' that would govern 'numerous' cases and issues that are 'fact-bound and situation-specific.'" *Id.* at 1174 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–11 (2006)). When a case "'involve[s] substantial questions of state as well as federal law,' this factor weighs against asserting federal jurisdiction." *Id.* at 1175 (citation omitted).

The court finds that the issues regarding R.S. 2477 raised by MFLP "are not central to [its] claims, and the claims are 'rife with legal and factual issues that are not related' to the federal issues." *See Suncor Energy*, 405 F. Supp. 3d at 968 (quoting *Stark-Romero v. Nat'l R.R. Passenger Co. (Amtrak)*, No. CIV-09-295, 2010 WL 11602777, at *8 (D.N.M. Mar. 31, 2010)). Indeed, "questions involving real property rights are determined by state law unless federal law requires a different result." *Moses v. Wells*, 190 Fed. App'x. 634, 637 (10th Cir. 2006) (first citing *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 378–81, (1977); then *U.S. v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986); and then *Amoco Prod. Co. v. United States,* 619 F.2d 1383, 1389 n.4 (10th Cir. 1980)); *see also Wingers v. Sweet*, 190 Fed. Appx. 629, 632 (10th Cir. 2006) (same); *cf. Gilmore*, 694 F.3d at 1174 ("[W]hen a state-law claim 'involve[s] substantial questions of state as well as federal law,' this factor weighs against asserting federal jurisdiction." (citation omitted)). This case is quite different from those where jurisdiction was found under the substantial question prong of jurisdiction. For example, in *Grable*, "the meaning of the federal statute . . . appear[ed] to be the only legal or factual issue contested in the case." 545 U.S. at 315. Similarly, in a Tenth Circuit case finding jurisdiction under *Grable*, "construction of the federal land grant" at issue "appear[ed] to be the only legal or factual issue contested in the case." *Nicodemus v. Union Pac. Corp.,* 440 F.3d 1227, 1236 (10th Cir. 2006).

Here, it is apparent that the purported federal issues raised by MFLP regarding R.S. 2477 are not the only legal or factual issues contested in this action. Plaintiff's claims also do not involve a discrete legal question, and are "fact-bound and situation-specific," unlike *Grable. See Empire Healthchoice Assurance*, 547 U.S. at 701; *see also Bennett v. S.W. Airlines Co.*, 484 F.3d 907, 910–11 (7th Cir. 2007) ("What the Court said about *Grable* in *Empire Healthchoice* can be said here too. We have a fact-specific application of rules that come from both federal and state law

rather than a context-free inquiry into the meaning of a federal law.  State issues, such as the amount of damages, may well predominate.  Plaintiffs do not challenge the validity of any federal agency's or employee's action.").  Moreover, the case does not involve a state-law cause of action that "is 'brought to enforce' a duty created by [a federal statute]," where "the claim's very success depends on giving effect to a federal requirement."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 384 (2016).

Based on the foregoing, the court finds that federal jurisdiction does not exist under the second prong of the "arising under" jurisdiction, because MFLP's claims do not necessarily depend on a resolution of a substantial question of federal law.  *See, e.g.*, *Moses*, 190 Fed. App'x. at 637 ("[Q]uestions involving real property rights are determined by state law unless federal law requires a different result.").

As Plaintiff has not met the first two prongs of the test for substantial question jurisdiction under *Grable*, the court need not address the remaining prongs.  *See Suncor Energy*, 405 F. Supp. 3d at 968; *cf. Ormet Corp. v. Ohio Power Co.,* 98 F.3d 799, 807–08 (4th Cir. 1996) (applying the substantial federal question doctrine to support jurisdiction of an action for declaratory and injunctive relief when the plaintiff claimed an affirmative right based on various statutory definitions set forth in the Clean Air Act).

### D.    Jurisdiction Pursuant to the Declaratory Judgment Act

As mentioned, MFLP also appears to rely upon the Declaratory Judgment Act, 28 U.S.C. § 2201, as the basis for this court's subject matter jurisdiction over Count I.  *See* [Doc. 1 at ¶¶ 36–46].  The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought." 28 U.S.C. § 2201(a).[10]  The Act does not, however, "confer jurisdiction upon federal courts," and therefore "the power to issue declaratory judgments must lie in some independent basis of jurisdiction."  *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959, 964 (10th Cir. 1996) (citations omitted).  Thus, "in the absence of any pleading that invokes diversity jurisdiction, [ordinarily] the relevant basis is federal question jurisdiction under 28 U.S.C. § 1331."  *Id.*

As concluded above, Plaintiff fails to establish the court's federal question jurisdiction under § 1331 under the "well-pleaded complaint" rule.  *See supra*.  However, the "well-pleaded complaint" rule changes when, as here, a plaintiff brings an action for declaratory judgment based upon federal question jurisdiction.  *See Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012).  In this situation,

> the position of the parties is often reversed: the plaintiff asserts a defense to an anticipated action by the declaratory judgment defendant. It is the character of the impending action, not the plaintiff's defense, that determines whether there is federal question jurisdiction. *Thus, federal question jurisdiction exists in a declaratory judgment action if the potential suit by the declaratory judgment defendant would arise under federal law.*

*Cardtoons*, 95 F.3d at 964 (emphasis added) (citations omitted); *see also First Nat. Bank of Shawnee Mission v. Roeland Park State Bank & Tr. Co.*, 357 F. Supp. 708, 711 (D. Kan. 1973) ("[A]n action may be entertained in federal court 'only if the coercive action that would have been necessary, absent declaratory judgment procedure, might have been so brought.'" (citation omitted); 10B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2767 (4th ed. 2021)

---

[10] MFLP also cites to 28 U.S.C. § 2202, which provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment"; and Federal Rule of Civil Procedure 57, which provides in relevant part that "[t]hese rules govern the procedure for obtaining a declaratory judgment under [the Declaratory Judgment Act]."  *See* [Doc. 1 at ¶ 48].

(same).  Accordingly, "federal question jurisdiction in this case turns on whether there would be federal question jurisdiction over the well-pleaded complaint that [Defendants Scully and Kjolhede] may bring against [MFLP]."  *Cardtoons*, 95 F.3d at 964; *see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 19 (1983) ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.").  Further, that MFLP's claims may merely *involve* general access rights previously created under R.S. 2477 does not resolve the jurisdictional issue.  *See Cardtoons*, 95 F.3d at 965.

      *Nature of the Action Defendants May Bring Against Plaintiff.*  Here, Defendants' anticipated action would likely consist of a state law property dispute over whether MFLP can assert a right to an implied easement across Defendants' private properties, whether by necessity, estoppel or prescription.  Thus, whether or not the Access Road was open to the public after the Routt County Board of County Commissioners approved the Vacation Petition in 1930 does not implicate federal law.  MFLP may raise a defense that it holds an easement by implication, estoppel, or prescription as alleged in the Complaint, *see* [Doc. 1 at ¶¶ 47–72], "but federal-question jurisdiction does not lie as a result."  *See Devon Energy*, 693 F.3d at 1211 (affirming district court's dismissal of declaratory judgment complaint for lack of subject matter jurisdiction, in part, because defendant's anticipated state-law claims "do not *necessarily* raise a disputed federal issue" (emphasis in original)); *see also Moses*, 190 Fed. App'x. at 637 ("[Q]uestions involving real property rights are determined by state law unless federal law requires a different result.").

To be sure, in the Motion to Dismiss, Defendants do not dispute that the Complaint sufficiently alleges the Trull Creek Road was accepted as a public road under R.S. 2477 *before* the Vacation Petition in 1930.  *See* [Doc. 37 at 4 ("There is no dispute that the Trull Creek Road was opened as a public road. Rather, the issue is whether the public road survived its abandonment and vacation in 1930 at the request of Plaintiff's predecessor."); Doc. 39 at 2 ("Thus, the issue here is whether the Court can grant Plaintiff a private easement under RS 2477, as distinct from the public right-of-way originally granted under RS 2477 in 1913 and abandoned in 1930.")].  But there is also no dispute that in 1930, a petition to vacate Trull Creek Road was filed with the Routt County Board of County Commissioners; signed by the predecessor of MFLP – J.P. Monger; and approved by the Board of County Commissioners.  *See* [Doc. 1 at ¶¶ 24–25].

However, whether or not the Trull Creek Road was abandoned does not raise a claim or defense under R.S. 2477 regarding a private easement.  A review of the Complaint and MFLP's Response confirm this conclusion.  Specifically, MFLP argues in its Response that the Access Road "was not abandoned by the 1930 petition." [Doc. 38 at 9].  This assertion is consistent with the Complaint, wherein MFLP "takes the position that the [ ] Access Road is a public road pursuant to RS 2477" and alleges that "Defendants assert that it is not [a public road] and  . . . can only be used for agricultural purposes."   [Doc. 1 at ¶ 37].

By MFLP's logic, if the Access Road is indeed a "public road" as MFLP claims, then R.S. 2477 is not implicated because, as explained above, Plaintiff has not shown that that statute creates a cause of action for a private easement on a public road.  *See Lovvorn*, 701 P.2d at 144 ("The ultimate distinction between a public road and a private easement, however acquired, is that the private easement can be, and is, limited to specific individuals and/or specific uses while a public road is open to all members of the public for any uses consistent with the dimensions, type of

surface, and location of the roadway."). On the other hand, if the Access Road is private as Defendants allegedly claim, then R.S. 2477 is not implicated because that statute likewise does create a cause of action for a private easement on a private road. *See, e.g.*, *Fairhurst*, 172 F. Supp. 2d at 1332 ("An R.S. 2477 right-of-way authorizes the use of the land within its scope as highway, which . . . means use as a public road. As an R.S. 2477 right-of-way cannot exist without the public road and vi[ce] versa, the two are essentially synonymous in this context."). In other words, whether the Trull Creek Road survived the 1930 abandonment or not, R.S. 2477 will not provide the private easement that MFLP seeks in this action. *Cf. Peper*, 2006 WL 2583119, at *1 ("The fact that Plaintiff's predecessor in interest built the road, although relevant to his claim to have an easement by necessity, does not support his claim of an actionable title interest under R.S. 2477."). In the Response, MFLP acknowledges that its "position does not rest on the status of the [ ] Access Road[ ] as a public road. Rather, what is in dispute is the impact of the 1930 petition on MFLP and its right to use the Monger Access Road to access their property." [Doc. 38 at 4]. However, MFLP again does not explain how any dispute regarding the "impact" of the Vacation Petition "and its right to use the [ ] Access Road" implicates R.S. 2477, especially since the Parties do not dispute the Trull Creek Road was accepted as a public road under R.S. 2477 *before* the Routt County adopted the Vacation Petition in 1930.

Accordingly, the court concludes that it lacks federal question jurisdiction over Plaintiff's declaratory judgment claim under Count I concerning a private easement across Defendants' properties pursuant to R.S. 2477.

## II.    Count II – Declaratory Judgment Seeking an "Implied Easement by Federal Law"

MFLP's Count II seeks an order declaring its rights to an implied easement by necessity under "federal common law." [Doc. 1 at ¶ 49]. MFLP again appears to rely upon the Declaratory Judgment Act as the basis for this court's subject matter jurisdiction over Count II. *See* [Doc. 1 at

¶¶ 36–46].  As mentioned above, MFLP "must have standing to seek each form of relief in each claim."  *Coll v. First American Title*, 642 F.3d 876, 891 (10th Cir. 2011) (internal quotation marks and citation omitted).

The Supreme Court has "held that a few areas, involving 'uniquely federal interests,'. . . are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts—so-called 'federal common law.'"  *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988) (citations omitted); *see also Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 850 (1985).  The issue must involve "an area of uniquely federal interest", and federal common law will displace state law only where "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law,' . . . or the application of state law would 'frustrate specific objectives' of federal legislation."  *Boyle*, 487 U.S. at 507 (citations omitted).  Notably, as previously mentioned, "questions involving real property rights are determined by state law unless federal law requires a different result."  *Dolan v. Madison*, 197 Fed. App'x. 724, 727 (10th Cir. 2006) (citations omitted).

Here, MFLP cites no authority for its assertion that federal common law applies to grant an implied easement under Count II, nor does Plaintiff explain how the instant real property disputes concern "an area of uniquely federal interest" such that federal common law must displace Colorado state law.  And as explained above, R.S. 2477 does not confer subject matter jurisdiction over Plaintiff's Count I; for the same reasons, that statute likewise does not confer jurisdiction over Plaintiff's Count II.  Accordingly, the court finds that, because Colorado is the state where the subject properties are located, Colorado law governs Plaintiff's Count II.  *See U.S. v. Turley*, 878 F.3d 953, 957 (10th Cir. 2017) ("Because Oklahoma is the state where the Property is located,

we conclude that Oklahoma law should govern this dispute."); *see also Moses*, 190 Fed. App'x. at 637; *Baker's Peak Landowner's Ass'n, Inc. v. U.S.*, CIV.A. 00-S-519, 2001 WL 34360431, at *4 (D. Colo. Aug. 2, 2001) ("Colorado recognizes implied easements that arise by pre-existing use." (citing *Bromley v. Lambert & Son, Inc.,* 752 P.2d 595, 596 (Colo. App. 1988)).

## III.    Plaintiff's Remaining Easement Claims – Count III and Count IV

MFLP brings its Third and Fourth Counts seeking the court's declaration of "the rights, obligations and status of the parties under Colorado law."  [Doc. 1 at ¶¶ 59, 69].  Accordingly, there is no dispute that Colorado law applies to those claims.

## IV.    Dismissal of Action

Under circumstances such as these—where this court's original jurisdiction is lacking— the court cannot exercise supplemental jurisdiction over MFLP's state law claims (Counts III and IV) pursuant to 28 U.S.C. § 1367(a).  *Cf. Baker v. Go Toyota Scion Arapahoe*, No. 07-cv-01007-MSK-CBS, 2007 WL 3054982, at *2 (D. Colo. Oct. 18, 2007).  Because this court lacks subject matter jurisdiction over Plaintiff's claims, and because this case was filed in the first instance with this court on the basis of federal question and supplemental jurisdiction, this court finds dismissal of this action appropriate.

In making this determination, the court is mindful that the case has been pending in this court since April 2021, and that a Scheduling Order was entered on July 19, 2021, *see* [Doc. 33]. However, the court cannot overlook that the Parties have contested the propriety of subject matter jurisdiction in this court since Defendants filed the instant Motion on July 20, 2021—the day after the court entered the Scheduling Order.  Moreover, the Parties sought a stay of proceedings pending the outcome of the instant Motion to Dismiss, which the court subsequently granted.  *See* [Doc. 42; Doc. 44].  The proceedings which have occurred in this case since its inception will undoubtedly benefit the Parties upon the court's dismissal.  Because the court elects to dismiss this

case, it does not address Defendants' remaining arguments in the Motion to Dismiss, which challenge Plaintiff's ability to state a claim and purported failure to join indispensable parties. *See* [Doc. 37].

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1)  Defendants' Motion to Dismiss [Doc. 37] is **GRANTED**;

(2)  This case is **DISMISSED** without prejudice for lack of subject matter jurisdiction.

DATED:  March 21, 2022                                  BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge